May it please the court, my name is Clyde Wadsworth and I represent the plaintiff appellants in this case. I'll take five of the ten minutes allotted to our side and I understand Governor Abercrombie's counsel will take the remaining minutes and I like to reserve one minute of my time for rebuttal if I may. There are two issues for this court to decide now that Hawaii has enacted a new law that whether this case is moot and if so, whether the district court's order in judgment should be vacated. Plaintiffs submit that the answer to both questions is yes. First, this case is clearly moot. Since the filing of this appeal, the Hawaii marriage statute has changed. Same-sex couples are now allowed to marry in Hawaii and in fact, the plaintiff couples in this case have married. The original parties to this case all agree that they have no current dispute. Only the intervener, Hawaii Family IV, which I'll refer to as HFF, disagrees. On the issue of mootness, HFF has argued that this court should stay these appeals indefinitely until two pending lawsuits challenging Hawaii's new marriage equality law, both of which were dismissed at the courts of last resort, a process that could take many months, if not years. Respectfully, the stay argument ignores the settled law in this circuit and others, which apply a near categorical rule of mootness when a statutory change satisfies plaintiff's claims. First, HFF's argument conflicts with the law of this circuit, which holds that a statutory amendment renders a case moot unless the old law is virtually certain, quote, "'virtually certain,' unquote, to be reenacted. And in this context, their concern isn't reenactment, it's invalidation. Yes. So do we apply the same standard virtually? Do we look at the merits of the case? Do we look at the merits of the challenges? No. What they're asking you to do is look at the challenges themselves. I'm asking you, do we look at the merits of the challenge? Suppose we thought there were really meritorious challenges. Would that matter? No, Your Honor. It's HFF's burden to show that the two lawsuits, that either of the two lawsuits challenging the marriage equality act will succeed, such that it's virtually certain to be restored. That's their burden. That's their burden, and that's the burden that they haven't met. So your answer to Judge Breslin is yes. If they meet the burden of showing it's virtually certain it will be invalidated, then we do consider it. Yes. If they were able to show that it's virtually certain that the marriage equality act would be invalidated, then they would meet the standard in the Ninth Circuit. There are, of course, cases directly on point in the Seventh and Tenth Circuits which have squarely held that mootness is not defeated by independent litigation challenging the validity of a new mooting statute. That was the holding in Miller v. Benson in the Seventh Circuit and the holding in Citizens for Responsible Government v. Davidson in the Tenth Circuit. And did they look at the merits of the independent litigation? I mean, it seems a little odd for us to be looking at State law litigation and they didn't look at the merits, Your Honor. They said that the plaintiffs received or they achieved what they wanted or what they sought through their litigation, and that mooted the case, and that the fact that there was litigation challenging the new law was essentially irrelevant. We have urged you to apply the Seventh and Tenth standards, but even if you don't, there would have to be a showing under the Helleker case in this circuit that the new law was – excuse me, that the old law was virtually assertive. All right. So assuming that it's moot, what about the vacation, vacating question? Your Honor, when a case becomes moot on appeal, as you know, this Court's established practice or default rule is to vacate the decision. I thought that's not true. I thought it's essentially a discretionary question. Well, it's not under the – under this Court's ruling. Is this the issue your co-counsel is going to argue? Pardon me? Is this the issue your co-counsel is going to argue? No. The Governor's – Governor's counsel will argue – is planning to argue the mootness and vacater issues, but we hadn't divided mootness from vacater. Okay. Because you're down into your time now. Okay. And you've gone over – you've given away your rebuttal. All right. Well, I'm sure – I'm sure he'll be able to rebut any arguments that the other sides make. We believe the established practice in this circuit under the NS&D cases, the log cabin Republicans' cases, and the authorities that we've cited in our briefs require vacater in this case. That's the established rule. No – no exception has been met. Thank you. Good afternoon, Your Honors. May it please the Court, my name is Robert Nakatsuji, and I am a Deputy Attorney General for the State of Hawaii. With me today is Deputy Attorney General Gerard Lau. Mr. Lau and I represent Governor Neil Abercrombie in this case. As you know, the primary issues in this case in its current posture are mootness and vacater. We are asking the Court to simply follow its ordinary procedure on these issues. We respectfully submit that this case should be dismissed as moot because the challenge statutory language was repealed. We also respectfully submit that this Court should direct vacater of the district court's judgment so as to avoid any adverse consequences from the district court's decision. Such steps are entirely consistent with Ninth Circuit law, and where Ninth Circuit law doesn't control the law of other circuits. Now, Your Honor, in answer to some of your questions to Mr. Wadsworth, what we're asking the Court to do is to follow Miller and Citizens. These are the Seventh Circuit and the Tenth Circuit cases. These are the precedents that the Court has to follow. It would be most helpful to me if you talked about the vacating issue in your three minutes, because it hasn't been discussed yet. Well, I will get to that. If the Court will permit me, I just want to ask the Court to follow Miller and Citizens because Miller and Citizens seem to adopt a categorical rule that challenging the pending legal challenges do not defeat for vacater or, excuse me, do not defeat mootness. But if the Court is uncomfortable with applying Miller and Citizens to this circuit, then there is the other option of applying the standard that applies to legislative reenactment. There is law in this circuit on that. If the Court wants to apply that by analogy to the pending litigation situation, the Court can. The standard would be virtual certainty. And I would argue that there is no virtual certainty of these challenges succeeding. Now, in regard to vacater, Your Honor, what we're asking the Court to do is to direct vacater. And in the Ninth Circuit, vacater is supposed to be generally automatic. I'd like to point to some of the cases of this Court, Log Cabin Republicans, NASD dispute resolution, other cases like that, where the Court virtually automatically grants vacater when mootness is, when a case is dismissed on mootness grounds. Now, in regard to whether it's discretionary or not, ordinarily, when there's no discretionary, ordinarily, this Court will direct vacater. And this Court will not even remand the case to the district court to decide the vacater issue. This Court will just grant vacater. And I'd ask the Court to do that because there's no voluntary action here. It's our position that Governor Abercrombie did not engage in voluntary action here. It's our position, based on the chemical producers case, that it was the legislature that acted to enact Act I. Governor Abercrombie's role was not sufficient to constitute voluntary action there. And the chemical producers case is very clear. It does say that the legislature alone is attributable to that action. Furthermore, Your Honor, even if this Court does not believe that Governor Abercrombie is entitled to vacater, the plaintiffs certainly are. The plaintiffs had nothing to do with the enactment of Act I. So even if the Court disagrees with me on the voluntary action of Governor Abercrombie, at the very least, the plaintiffs are entitled to vacater. Your Honor, I would just like to reemphasize that the purpose of vacater is to clear the path for future litigation. The purpose is to prevent a district court decision from spawning any legal consequences so that no party is harmed. And I would argue that in this case, clearing the path for future litigation is something that vacater would accomplish. So in closing, Your Honor, I see that I'm out of time. I would simply ask the Court to follow its ordinary procedure, follow Ninth Circuit law, follow Miller and citizens from the Tenth Circuit and the Seventh Circuit if the Court is so inclined. But in any event, the law either in the Ninth Circuit or from the other circuits is clear. And respectfully, the Court should dismiss these appeals on mootness grounds but also direct vacater of the district court's decision. Thank you. May it please the Court, Ken Connolly for Hawaii Family Forum. Your Honors, the mootness issue presented here today is one of first impression in this circuit. So the cases relied upon by plaintiffs and the Governor are not controlling. But circuit law does provide you a guiding principle, and it's this. In cases of statutory amendment or repeal, the question this Court answers is whether to exercise jurisdiction, not whether it exists. And in making this determination, cases like Coral Construction and Jacobus establish that this Court balances the interests. In this case, the balance of interest compels the conclusion that this Court should hold the appeal pending the resolution of the State court challenge known as McDermott v. Abercrombie v. Weiss v. Porter. Those cases are both lost in the trial court. Is that right? They did, Your Honor. Yes. Are they State court cases? They're State court cases. State law cases? They're, yes. Complex issues of State law, Your Honor. Well, I'm sorry. The Amsterdam case is a Federal case. That's at this Court. That's a Federal issue. Yes. Well, it's raised a Federal issue, but it's been dismissed on standing grounds. In Federal court or State court? In Federal court. There's a Federal case and there's a State case. And there's a State case. The McDermott case is the case that we are saying this Court should hold the appeal for until it's resolved at the Hawaii Supreme Court. So there's only one case now. There's a case that's pending here, but it appears to have insuperable standing problems.  So there's one case we know of. Yes, Your Honor. What we would submit is that premature dismissal here risks harming the courts, the public interest, and all the parties. Exactly. It's the problem. If you win, you win. Then what? If we win. If you win on your State court issue, you win. Well, right. But that would – and that's what we're here to say. This case is not moot, Your Honor. Because if this Court prematurely dismisses the appeal now, and Act I is struck down by the Hawaii Supreme Court. Then other people who have a problem with Act I can bring a lawsuit. But the people in this case, the plaintiffs, have all – have gotten married. They don't have a problem. Well, as to those marriages, Your Honor, those marriages along with Act I have been challenged, as void ab initio. So we don't know currently the status of those marriages. If Act I is struck down by the Hawaii Supreme Court, it's going to be an issue of State laws to determine whether those marriages stay valid. So that's why this case is not yet moot. That's why this Court should continue to exercise jurisdiction. Because if Act I is struck down, every – the public interest – I suppose if that happens, the plaintiffs go in and file a 60B motion and the case comes back. They could do that. But that, again, would necessitate – that necessitates harm to all the parties, Your Honor. The courts would have to re-litigate this – well, not up to 60B, but if it goes back to scratch. If there's a vacator, for instance. If the case is vacated, what you'd have is the courts would have to re-entertain this litigation from scratch. The State would have to re-defend from the beginning the marriage laws. The people who voted overwhelmingly for the marriage amendment at a clip of about 69 percent to 29 percent would have to endure another challenge to the marriage amendment. HFF would have to intervene again to defend its significantly protectable interest. And even plaintiffs would have no – would have no place before this Court to remedy that problem, because there'd be no case like that. And you think you have no burden to demonstrate anything about the – the strength of that case before all this happens, before we just spin wheels? The burden here, Your Honor, in contradistinction to what plaintiffs and the Governors have said – the Governor has said, the burden is on the party looking for a mootness dismissal. That's where the burden is. To answer your – I think your question is a different question about where's the burden. I think, to take your question, is there a – should we look at the merits of that case? And I don't think you need to. We're not looking for a per se categorical rule. Every one of these cases where this Court has decided to continue to exercise We are looking for a per se categorical rule, which is that if there's pending litigation, no matter what its merits, we don't declare the case moot. We sit on it. In this case, though, we're saying these unique facts. So in other words, where a statutory amendment that ordinarily would have the potential to moot a case has, from before its inception, been subject to a State constitutional challenge, this Court should hold the case pending the resolution of that challenge. Even if it's a State constitutional challenge, it's utterly frivolous. I'm sorry, Your Honor? Even if we were to look at the State constitutional challenge and decide that it's utterly frivolous. Well, in this case, it's not, Your Honor. Well, I understand that. Have you demonstrated that? Or you're telling us we should look at that or we shouldn't look at that? Well, in this case, Your Honor, on these unique facts, I think that the facts speak clearly, that it's not frivolous. The defendants, another group of lawyers from the State. You haven't even told us what it is. It's a challenge that essentially says that the marriage amendment in Hawaii prevents the legislature under its normal and customary powers from legislating same-sex marriage, that there is another constitutional amendment necessary. So the defendants have moved, they leapfrogged the Intermediate Court of Appeals after the trial court dismissed the appeal, dismissed the case. The Hawaii Supreme Court has accepted the case on a discretionary basis on an accelerated track. Defendants in their motion for application to transfer it to the Hawaii Supreme Court said that this is an issue of fundamental importance to the State and one that implicates a novel or complex issue of State law. So this is a serious legitimate challenge to Act I, which threatens to completely restore the status quo ante. And if that's the case, this Court should continue to exercise jurisdiction. Now, to get to Miller and Davidson, Your Honor. I mean, isn't the real truth of all this, anyway, that since we have the two other cases, and since it's all going to go to the Supreme Court anyway, what happens to these particular cases is kind of no never mind? Well, not really, Your Honor. I mean, any uncertainty here we would submit to the Court redoubts to the benefit of our proposal. Any uncertainty as to whether there's going to be harm or whether this is this case is 80 percent or something. But we're going to decide two other cases, and they're going to decide, at least for purposes of our circuit, the same-sex marriage issue. And then probably it's all going to go to the Supreme Court, and the Supreme Court is going to decide whoever it decidess. And whatever may be the status of the district opinion in Hawaii is not going to matter a whit at that point. Well, that may be the case, Your Honor. But that, again, redounds to the benefit of our proposal. When there's any uncertainty, you hold it. There's absolutely no harm accruing to any of the parties right now by holding this deal. And there's also no harm to vacating it, because in the end, it's all going to be governed by these two other cases and by the Supreme Court. Well, we don't know the time frame on that, though, Your Honor, with respect. But if the Supreme Court takes another year to decide this, and that case is vacated in Jackson, the opinion is vacated below, what we then have is I think it's reasonable to expect the plaintiffs to refile a case in district court. And that's where we get to the balancing of equities, where I said the court will have to re-entertain protracted litigation. The State, which could very well have a different governor, will re-defend that case. HFL has to move in and intervene. I mean, practically, suppose this case takes a year or two before the Supreme Court issues an opinion. Is the question whether people will be able to become married in Hawaii during that year or two? I'm sorry, Your Honor. Do you mean the McDermott v. Etta State case below? No. I'm asking the United States Supreme Court, as Judge Berzon said, is clearly going to decide this question. In the meantime, will have decided it. In most cases so far, the Supreme Court has stayed the correct office, at least where it's new in that State. What will happen in Hawaii if we dismiss and vacate? What will the status be during the period until the Supreme Court decides the case at our United States Supreme Court? What would the status be if we discontinued and stayed it, and what would it be if we just vacated? Would it have any effect? Would it be controlling? What will go on in Hawaii? Well, right now, Act I permits same-sex couples to get married in Hawaii. Yes. So if you hold the case, that continues. If you dismiss the appeal and vacate the opinion, and then Act I is struck down, that's where we're saying the Supreme Court should continue to exercise jurisdiction. Let's put it in two parts. You say, assume the status quo. We vacate, and the status quo will be that the – whether we vacate or not, the status quo will be that people can get married in Hawaii. That's correct, Your Honor. Until Act I is resolved by McDermott. Right. If Act I is overturned by the Hawaii court, then people will not be allowed to get married. That's correct. And if this case is dismissed – And will that be affected by this case being dismissed? It will be, because the plaintiffs in this case would have no vehicle by which this court could then potentially at least hear the merits of the appeal. It can't if it has to start from scratch at the district court. I don't understand. But we're viewing the merits of the appeal in the other two cases anyway. So what difference does it make? Well, we don't know what the difference is, Your Honor, to be honest. That's right. You don't know. But whatever it is, it's the same. We don't know whether that's – we don't know whether Sepship or Latta is going to – I can't read the mind of the Court, Your Honor. So in a sense, if it's a broad ruling, it may resolve the issue. If it's narrow – How could it be too narrow to resolve the issue in Hawaii? It could be based on legislative history. It could be based on the unique facts of each State. Is there animus? Is there animus that this Court finds that we wouldn't agree with but this Court might find now? But the point is that holding the appeal here does nothing. We're coming up on three years in this case. If we dismiss it now and Act I is struck down next week, everyone is hurt. If you hold the appeal, no one is hurt. There is one other issue I'd like to raise. I see my time running out, Your Honors. We have a pending motion to dismiss the Governor's appeal. Our argument here is simple. The motions panel has reserved that issue for this panel. The Governor was a defendant below suit in his official capacity. The District Court dismissed all plaintiff's claims against him and he is therefore not aggrieved and has no right to take an appeal. Now, it's not our argument that he can't participate in the appeal. It's that he must be realigned as an appellee in this case. The Camretta Court confirmed very recently that courts – that courts review judgments, not statements and opinions. And the Governor simply has no position here as an appellant. He should be an appellee. It's not enough as the Governor has proffered a subjective belief that the constitutionality of the marriage laws of Hawaii are in question. That's – this Court in South Lake Tahoe – And what difference will that make? We still have another party. That's true, Your Honor. But for purposes of this Court guarding its place as a co-equal branch of government, the rules matter, Your Honor. And in this case, the Governor should be realigned as an appellee. That's our argument there. Okay. Thank you, counsel. Thank you, Your Honor. We'll give you one minute for rebuttal. On the issue of vacator, Your Honors. First of all, although the McDermott case the counsel is referring to has been taken by the Hawaii Supreme Court, it's in the middle of briefing. It is not on an accelerated schedule. The plaintiffs in the case have filed a brief. The State has yet to file a brief. There has been no reply. There has been no oral argument scheduled. So this case could continue at least for several months, if not years. There is no precedent in this circuit for simply holding a case like this indefinitely. And that's essentially what the other side is asking you to do. In terms of trying to predict the outcome – Well, one way we could hold it was just decide at the same time we decide the other two cases, and then there won't be any problem. Well, if Your Honors were going to reach the merits of the case, that would be true. But here, there's no disagreement, there's no dispute among the parties anymore. It's simply the intervener who wants the case held. We're talking about predicting outcomes, trying to predict what's going to happen in the White Supreme Court with this challenge that we believe is incredibly weak, and if it's not frivolous, it borders on the frivolous. But the Court doesn't have to decide that. The whole point of vacator, the whole point of the vacator doctrine is so that the Court doesn't have to try to predict outcomes in independent litigation. It's a practical matter. If we vacated it and the statute was overturned, he's saying that your same clients would become aggrieved again because their marriages would be no good, and they would come back into court and would be related to the same judge who would say the same thing, would be back in the same place. Well, but the circumstances could well be different depending on what the Hawaii Supreme Court does and whether, in fact, any marriages that have taken place have been invalidated. So we – if this case is – if the district court decision is vacated, as we believe it should be, then we should be allowed to go back into district court and make any arguments that are appropriate. But all I'm pointing out is if anybody has a problem, it's you guys. Yeah, exactly. And we believe the case is moot and that this – that the Court's precedents demand vacator, unless there are any other questions. Yes. Your – you have no practical problems, I understand. Everybody can get married now, and all your – the only thing facing you is the case that you said borders on frivolous. Correct, Your Honor. And the fact that – If it's a – then, if it borders on frivolous, the Hawaii Supreme Court will decide in your favor, and people will continue to get married. That is correct, Your Honor. Yeah. And our concern is that in the remote chance that the other side is right, that the intervener is right, and that the old marriage regime is restored, we should be able to go back into district court and fight the constitutionality of the old marriage law, assuming this Court hasn't already come down with a decision. If we haven't set it aside, we'll be right here. Right. If you haven't set it aside, they're going to argue that we're precluded from doing that by res judicata and collateral estoppel. And our position is that if that remote possibility occurs, that we should be able to go back into court and litigate these issues. I don't understand. Why – if we don't vacate it, why can't you come back into court? If it's not vacated, the other side may well argue, or a governor with a different view in the future from the present governor may argue that the district court's decision is an adjudication on the merits between the same parties and that that would preclude us from relitigating the same issues under res judicata or collateral estoppel doctrine. So that is our concern, and that's the concern that is voiced in the cases that require vacater in the circumstances. So why wouldn't you want us to hold a decision until we see what the Hawaii Supreme Court thinks? We don't believe the law in the circuit supports that, Your Honor. No. We're supposed to – does it say we can't? We can't defer to the Hawaii Supreme Court and wait to see what they say? We believe that the precedent in the circuit, as written, requires a showing. In order to avoid mootness, requires a showing that the old statute be virtually certain to be restored, and if that showing hasn't been made under the law, the circuit, the case is moot. Okay. Thank you. The case is here. It will be submitted. The Court will stand in recess for the day.
judges: REINHARDT, GOULD, BERZON